IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Bernice Butler, | ) | Civil Action No.  8:13-cv-01088-RMG-JDA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of Defendant Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for Social Security Income ("SSI") benefits.  For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded.

## PROCEDURAL HISTORY

On September 30, 2008, Plaintiff filed an application for SSI [R. 19], alleging an onset of disability date of January 1, 2006.[1] [*Id.*]  Plaintiff's claims were denied initially on April 27, 2009 [R.81–84], and on reconsideration on May 24, 2010 [R. 90], by the Social Security Administration ("the Administration").  Plaintiff requested a hearing before an administrative law judge ("ALJ") and on August 23, 2011, ALJ E. Lee Morgan conducted a de novo hearing on Plaintiff's claims.[2]  [R. 101–136.]

---

[1] Plaintiff previously filed applications for SSI in April 1986, April 1998, June 2000, and June 2004, all of which were denied. [R. 19.]

[2] Plaintiff was represented at the hearing by her attorney, W. Daniel Mayes. [R. 19.]

The ALJ issued a decision on November 23, 2011, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 19–31.] At Step 1,[3] the ALJ found Plaintiff had not engaged in substantial gainful activity since September 30, 2008, the application date. [R. 21, Finding 1.] At Step 2, the ALJ found Plaintiff had the following severe impairments: hypertension, degenerative joint disease of the right knee, anxiety and major depressive disorder. [R. 21, Finding 2.] The ALJ also determined Plaintiff had a non-severe impairment of a heart murmur. [R. 22.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 22–23, Finding 3.] The ALJ specifically considered Listing 12.04 and Listing 12.06. [Id.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> I find that the claimant has the residual functional capacity to perform simple routine unskilled sedentary work as defined in 20 C.F.R. 416.967(b), which is work that involves lifting no more than 10 pounds at a time; involves sitting, but a certain amount of walking and standing is often necessary in carrying out job duties; with no ongoing interaction with the public or waiting on customers; and no manipulative, visual or communicative limitations.

[R. 23, Finding 4.] Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable to perform her past relevant work as an assembler, production line worker, companion or cashier. [R. 30, Finding 5.] Considering the Plaintiff's age, education, work experience, and RFC, however, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. [R. 30, Finding 9.] Accordingly, the

---

[3] The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

ALJ concluded Plaintiff had not been under a disability, as defined by the Act, at any time from September 30, 2008, through the date of the decision. [R. 31, Finding 10.] The ALJ, thus, declined to award SSI benefits.

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined review. [R. 1-4.] Plaintiff filed this action for judicial review on April 23, 2013. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and claims the ALJ erred by

(1)     failing to explain why Plaintiff was not disabled under the medical and vocational guidelines [Doc. 16 at 20];

(2)     failing to properly assess the treating physicians' opinions [*id.* at 27]; and

(3)     failing to properly assess Plaintiff's credibility [*id.* at 30].

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence because the ALJ

(1)     properly found that Plaintiff's impairments do not meet or medically equal a listing [Doc. 17 at 5];

(2)     properly weighed the treating physicians' opinions [*id.* at 7];

(3)     properly found that Plaintiff's testimony lacked credibility [*id.* at 10].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must

include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Commissioner*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient

4

reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Commissioner*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power*

5

& *Light Co. v. Lorion*, 470 U.S. 729, 744 (1985);*see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

has lasted or can be expected to last for a continuous period
of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).   The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.   20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.   *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).   The claimant must prove disability on or before the last day of her insured status to receive disability benefits.   *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).   If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.   *Grant*, 699 F.2d at 191.   If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.   20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

8

## A.  *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575, 416.974–.975.

## B.  *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined

9

impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C. *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[5]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D. *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's RFC[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E. *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g),

---

[5]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[6]RFC is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the

---

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. 20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

11

record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the

treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(d), 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

14

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself,

> support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.     Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings

16

based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Treating Physician Opinions**

Plaintiff takes issue with the ALJ's weighing of the opinion evidence of record, contending that the ALJ failed to properly assess the treating physician opinions, specifically the opinion of Dr. James Ford ("Dr. Ford").  [Doc. 16 at 26.]

The responsibility for weighing evidence falls on the Commissioner or the ALJ, not the reviewing court. *See Craig*, 76 F.3d at 589; *Laws*, 368 F.2d at 642; *Snyder*, 307 F.2d at 520.  The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir.2005) (*citing* 20 C.F.R. § 404.1527).  ALJs typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (*quoting Mastro*, 270 F.3d at 178).  While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).  Additionally, Social Security Ruling ("SSR") 96–2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*16 1996 WL 374188, at *4 (July 2, 1996).  However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions.  In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner.  Such opinions on these issues must not be disregarded.  However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96–5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C .F.R. § 404.1527(e) (stating an ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairments meet or equal a listing, or the claimant has a certain RFC).

**ALJ's Treatment of Medical Opinions**

Plaintiff alleges disability based on a heart murmur, depression, anxiety, panic attacks, high blood pressure, acid reflux, obesity and back and wrist pain. [R. 92.][8] Plaintiff claims her depression and anxiety cause her to be unable to work because "it bothers [her]

---

[8] For purposes of her appeal, Plaintiff has focused her argument on her mental health impairments and the alleged errors that the ALJ made with respect to those ailments, and the Court has likewise focused on these issues.

to be around other people; [she] has fainting spells and breakout in sweat." [R. 150.] Plaintiff reports that she relies on family, primarily her sister, to help her with daily tasks. [R. 172.]

### *Brief Medical Summary*

#### *(1) Dr. James Ford*

On August 17, 2011, Dr. Ford completed a report on Plaintiff's behalf entitled Medical Opinion re: Ability to Do Work Related Activities (Mental) (the "Report"). [R. 363.] Dr. Ford treated Plaintiff from June 2010 until June 2011. In the Report, Dr. Ford assessed that Plaintiff had a fair capability of remembering work-like procedures, understanding and remembering very short and simple instructions, and carrying out such instructions. [*Id.*] He judged that Plaintiff would not be able to  maintain attention for a two hour segment, maintain regular attendance and punctuality, or sustain an ordinary routine without special supervision. [*Id.*] Dr. Ford reported that Plaintiff would not be able to work with others without being distracted, not be able to make simple decisions, not complete a normal workday without interruption from mental health symptoms, not perform at a constant pace without an unreasonable number of rest periods, not accept instructions or respond to criticism well, not get along well with co-workers, not respond appropriately to changes in routine, not deal well with work stress and not be aware of normal hazards and take appropriate precautions. [R. 363.] He did find Plaintiff would be "fair" at asking simple questions and requesting assistance. [*Id.*] Dr. Ford did not believe that Plaintiff would be able to handle semiskilled or skilled work. [*Id.*]

Dr. Ford explained that Plaintiff experienced "dysphoria, crying spells," social isolation and depression, which left her unable to "maintain focus for extended periods of

time." [R. 365.] He further articulated that Plaintiff's depression "limits her ability to interact outside of family" and that she is essentially homebound except for doctors' appointments. [*Id.*] He estimated that Plaintiff would miss more than four days per month of work because of her mental illness but did state she could manage her own benefits. [R. 366.]

### (2) Sharon Wise, LNP

Ms. Wise, a licensed nurse practitioner at Healthwise Family Practice, LLC, provided a report dated March 5, 2009. [R. 289.] Ms. Wise reported that Plaintiff was diagnosed with anxiety/depression and phobias. [*Id.*] Medication has helped Plaintiff's condition. [*Id.*] Ms. Wise described Plaintiff as oriented with respect to time, person, place and situation; described Plaintiff's thought process as "distractable" and her thought content as "suspicious"; found Plaintiff's affect to be "worried/anxious;" and Plaintiff's concentration to be adequate and her memory to be good. [*Id.*] Ms. Wise reported that Plaintiff's "work related limitation in function due to the mental condition" was "obvious." [*Id.*]

### (3) Other Medical Sources of Record

On April 15, 2009, Plaintiff presented to Dr. Robert D. Phillips ("Dr. Phillips") for a mental status exam on referral by the Disability Determination Division, based on allegations of depression and anxiety. [R. 290.] Plaintiff reported that she was doing well until her brother was killed two years prior to the assessment. [*Id.*] Plaintiff told Dr. Phillips that she lives with two of her sons, is separated and has a twelfth grade education, but did not graduate from high school. [*Id.*] On exam, Dr. Phillips noted Plaintiff was "tense and depressed" and "appeared to be very sad." [R. 291.] Plaintiff stated that she usually laid

around the house but does cook occasionally and takes care of her own personal hygiene. [*Id.*] Dr. Phillips determined that Plaintiff was under a lot of stress, that her vocabulary was "inconsistent" and her attention span was "less than normal." [*Id.*] Further, "her thought content was normal but her logical thinking was limited. Her long term memory was poor and she had limited abstract thinking ability." [*Id.*] Dr. Phillips concluded

> She would not be consistent in her ability to function on a job due to her high stress level and her depression. Her ability to understand directions is still fairly good and her ability to follow directions is also good at this point.
>
> Her thinking is fairly clear but she does have a strong underlying sense of loss of functioning with a moderate level of stress. Her ability to work with peers and supervisors is increasingly affected by her stress.
>
> She can do continual work but she would not be reliable in her performance or attendance. She has a somewhat complex combination of depression, anxiety (grief) and stress. Most of her emotions are situationally based. She does not know what to do and so she is feeling unable to manage her problems. If things turned around for her she would probably begin to feel better at once.

[R. 293.]

Dr. Lisa Klohn ("Dr. Klohn") analyzed the mental status exam and concluded that Plaintiff's allegations were "only partially credible." [R. 307.] "While she does have depression and anxiety, there is no substantiation of the fainting spells she indicates she has around others." [*Id.*] Dr. Klohn noted that Plaintiff was not diagnosed with a panic disorder, but instead was diagnosed with generalized anxiety disorder and major depressive disorder. [*Id.*] Dr. Klohn wrote that Plaintiff "has had woefully little treatment and the claims about functional limitations are a bit excessive considering that she has not followed through with psych care and her PCP typically notes her mental status to be unremarkable." [*Id.*] Dr. Klohn noted Dr. Phillips' remarks that Plaintiff "would be unreliable

21

in performance or attendance" but found these remarks were "a bit contradictory." [*Id.*] "Overall, while it is likely that the claimant has severe impairments in depression/anxiety, it is unlikely that these would preclude the performance of unskilled work." [*Id.*]

A subsequent evaluation of Dr. Phillips' report by Dr. Samuel Goots ("Dr. Goots") concluded that Plaintiff "has credible symptoms which are consistent with anxiety and depression.  Her mental condition is not currently of listing level severity but does impose moderate functional limitations without totally precluding work activities." [R. 348.] Dr. Goots reported that Plaintiff could follow simple instructions and complete simple tasks but would have moderate difficulty with more complex tasks. [*Id.*] He concluded Plaintiff could complete a normal work week with "an occasional interruption" due to her mental conditions and that she should have limited contact with the general public and coworkers. [*Id.*]

Plaintiff also underwent a Physical Residual Functional Capacity Assessment ("PRFCA") with Dr. Richard Weymouth ("Dr. Weymouth").  Dr. Weymouth found that Plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds. [R. 355.] He assessed that Plaintiff could walk six hours in an eight hour day and had unlimited push/pull capacity.  [*Id.*]     Plaintiff was able to climb a ramp/stairs frequently and a ladder/rope/scaffold occasionally. [R. 356.] Dr. Weymouth determined Plaintiff could balance, stoop, kneel, crouch and crawl frequently. [*Id.*] She had no manipulative, visual, communicative or environmental limitations. [R. 357–58.] Dr. Weymouth concluded that Plaintiff's "allegations are partially credible in that there is uncontrolled BP but no evidence of CHF nor MI all other allegations are no[t] supported by physical evidence." [R. 359.]

### *ALJ's Treatment of Medical Opinions*

22

In evaluating the Report provided by Dr. Ford, the ALJ concluded that it was not entitled to controlling weight, "or even great weight" because "Dr. Ford's assessed restrictions and limitations were not supported by his own treatment records dated February through July 2011 (Exhibit C21F) wherein he diagnosed recurrent major depressive disorder with psychotic features." [R. 29.] Additionally, the ALJ found Dr. Ford's assertions were not consistent with the record as a whole, noting that the "level of severity of [Plaintiff's] impairments were not consistent with the overall findings of other health professionals included in the record." [*Id.*] Finally, the ALJ discounted Dr. Ford's opinion because the ALJ found it was directed to an issue reserved for the Commissioner. [*Id.*]

The ALJ gave "consideration" to the State Agency medical consultants that "[Plaintiff] retained the residual functional capacity to perform work activity, and their conclusions are not contradicted by other medical opinions of record, or by any fully credible testimony and are thus consistent with the totality of the record. Consequently, I have given their conclusions significant weight" [R. 30.] Based upon the "entire record" the ALJ found that "the residual functional capacity set forth above is an accurate reflection of the claimant's residual functional capacity." [*Id.*]

**Discussion**

Upon review the ALJ's treatment of the treating source opinions, the Court finds the ALJ failed to adequately explain his weighing of evidence related to the effect of Plaintiff's mental impairments on her RFC. As noted, the ALJ discounted Dr. Ford's opinion because it was directed to an issue reserved for the Commissioner, and because the opinion was not supported by the weight of the record. Although Dr. Ford opined Plaintiff suffers from

23

extreme limitations and severe depression and anxiety that would make work impossible, the ALJ concluded that treatment records failed to support these findings which are, ultimately, reserved to the Commissioner.  [R. 30.]  Additionally, the ALJ noted that Plaintiff interacted appropriately with him and responded appropriately to all questions that were asked of him. [*Id.*]

The Court agrees with Plaintiff that the ALJ did not properly articulate how he weighed the medical evidence.  As an important initial matter, the ALJ failed to explain how much weight he actually assigned to Dr. Ford's opinion.  Second, the ALJ does not explain how Dr. Ford's diagnosis and ultimate conclusion are in conflict, as the ALJ suggests they are in his opinion.  Third, the Court notes that there is contradictory evidence of record which suggests that Plaintiff is limited in her ability to engage socially with coworkers or the public, limited in her ability to consistently attend work and limited in her ability to perform, and the ALJ failed to explain his reasons for discounting these limitations.  For instance, the ALJ explained that he did not find Dr. Ford's assessment to be compatible with the case notes on Plaintiff.  However, the  ALJ failed to explain how he weighed Dr. Ford's opinion with respect to Plaintiff's alleged limitations in light of the evidence both contradicting and supporting the same.  As an example, though the notes for Plaintiff from Dr. Ford on February 3, 2011, indicate that Plaintiff was "alert" and "oriented," the notes also describe Plaintiff as "noticeable depressed" and having "auditory and visual hallucinations." [R. 415.] Dr. Ford diagnosed her with major depressive disorder, which was "recurrent" and "severe with psychotic features." [*Id.*] Further, the notes indicated that Plaintiff was not stable and needed continued treatment to prevent decompensation and improve her level of functioning. [*Id.*] Notes on July 26, 2011, indicate that Plaintiff was "fidgety and restless,"

24

that her speech was "halting at times" and that her affect was "anxious, depressed and tearful." [R. 417.] Plaintiff's hallucinations were continuing. [*Id.*]

Other medical records also contradict the ALJ's finding that Dr. Ford's conclusions are not supported by the record. A psychiatric clinic visit from January 5, 2011, noted that Plaintiff was suffering from "recurring episodes of depression" and discussed unresolved family issues of sexual abuse and an unsolved murder, which the ALJ's opinion failed to acknowledge. [*See* R. 421.] Plaintiff reported to her therapist on February 25, 2011, that she was "drowning without a life vest." [R. 424.] On April 14, 2011, she stated to her therapist that "she feels like she is losing control." [R. 426.] On April 28, 2011, Plaintiff had another session with her therapist and told him he was "too down to think of anything except being alone with her misery." [R. 427.] The therapist noted on May 12, 2011, that Plaintiff's "affect indicates that she is still feeling down" and that her affect "is worse now than it was when she first came for treatment." [R. 428.] In the therapist's opinion, he worried Plaintiff "might explode" with all of her stressors. [R. 431.] The ALJ failed to discuss any of these records or explain how he reached the conclusion that Plaintiff "had not been seen on a regular and consistent basis for any medical treatment." [R. 27.]

The ALJ also fails to explain how he weighed the opinion of Dr. Phillips, who examined Plaintiff and concluded that she had generalized anxiety disorder and major depressive disorder. [R. 24.] Dr. Phillips found that Plaintiff "would not be consistent in [her] ability to function on a job" and could "not be reliable in performance or attendance." [*Id.*] Finally, the ALJ failed to adequately explain why the non-treating, non-examining agency physicians' opinions should be accorded substantial weight when they are contrary to the

25

treating physician and examining physicians' determinations which appear to be, as noted above, supported by portions of the record.

It is the duty of the ALJ to resolve conflicts in the evidence of record, *Hays v. Sullivan*, 907 F.2d at 1456, and without a discussion of the conflicting evidence, it is difficult for a reviewing court to (1) track the ALJ's reasoning and be assured that all record evidence was considered and (2) understand how the ALJ resolved conflicts in the evidence, *see Mellon v. Astrue*, No. 4:08–2110–MBS, 2009 WL 2777653, at *13 (D.S.C. Aug.31, 2009) ("[S]o long as the narrative opinion is sufficien[tl]y detailed and cogent on the ultimate issues for the reviewing court to follow the ALJ's logic and reasoning and supported by substantial evidence in the record, then the lack of specific findings on more subordinate issues ... does not require reversal.").  Further, the responsibility for weighing evidence falls on the Commissioner or the ALJ, not the reviewing court, *see Craig*, 76 F.3d at 589; and the ALJ must carefully weigh treating physician opinions and explain the weight he assigns to the various opinions, *see* 20 C.F.R. § 404.1527; SSR 96–2p, 1996 WL 374188, at *4 (July 2, 1996).  In this case, the ALJ failed to explain how he resolved conflicts in evidence in the record related to Plaintiff's alleged mental limitations, failed to give a specific weighting to Dr. Ford's opinion, failed to properly consider Dr. Phillips' opinion, and failed to adequately explain why the non-treating, non-examining agency doctors' opinions were consistent with the record and thus entitled to great weight. Accordingly, the Court can not find that the ALJ's weighing of the medical evidence is supported by substantial evidence.

**Plaintiff Remaining Allegations**

The Court finds the ALJ's failure to explain his RFC assessment, including how he weighed and resolved conflicts in the evidence is a sufficient basis to remand the case to the Commissioner; thus, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ.  However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error, including Plaintiff's allegations that the ALJ failed to properly evaluate Plaintiff's credibility and that the ALJ should further consider Plaintiff's literacy limitations with respect to the disability guidelines.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be reversed and remanded.

IT IS SO RECOMMENDED.

July 23, 2014                              /s/Jacquelyn D. Austin
Greenville, South Carolina          United States Magistrate Judge

27